# EXHIBIT K

compensations and other benefits as MBNA's Chairman of the Board. Specifically, for FY:04, MBNA paid defendant Lerner $500,000 in salary. Accordingly, defendant Lerner lacks independence from defendants Milstead, Berick, Boies, Civiletti, Jews and Markowitz, defendants who are not disinterested and/or independent and who exert influence over defendant Lerner's compensation by virtue of their positions as members of the Compensation Committee. The Compensation Committee makes recommendations to the Board with respect to non-CEO compensation, incentive-compensation plans and equity-based plans. This lack of independence rendered defendant Lerner incapable of impartially considering a demand to commence and vigorously prosecute this action;

(d) According to MBNA's Proxy Statement filed with the SEC on or about March 15, 2005, non-employee directors on the Board each receive an annual retainer of $70,000. Further each Audit Committee member receives $15,000 annually, each Compensation Committee and Governance Committee member receives $5,000 annually and each Committee Chairperson receives $15,000 annually. Non-employee directors are paid $1,500 for each Board, committee or subcommittee meeting attended. Defendants Berick and Civiletti receive an additional $8,000 retainer for serving on the MBNA Europe Audit Committee as well as $2,000 for each MBNA Europe Board or committee meeting held outside of the United States. Each non-employee director also annually receives 5,000 options to purchase MBNA stock that is exercisable immediately. Accordingly, defendants Berick, Boies, Civiletti, Jews, Markowitz, Milstead and Unger were incapable of impartially considering a demand to commence and vigorously prosecute this action because they have an interest in safeguarding their substantial compensation;

(e) According to MBNA's public website, defendants Jews, Berick, Markowitz, Milstead and Unger were, during the Relevant Period, members of the Audit Committee. The Audit Committee is responsible by its own charter for assisting the Board's oversight of: (i) the integrity of the Company's and the Bank's financial statements; (ii) the Company's and the Bank's compliance with

legal and regulatory requirements; and (iii) the performance of the Company's and the Bank's internal audit function and independent auditors. Specifically, the Audit Committee is responsible for reviewing with management the annual audited financial statements and quarterly financial statements and other financial reporting matters, including: significant transactions which are not a normal part of the Company's operations; any major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles; any major issues as to the adequacy of the corporation's internal controls; any special steps adopted in light of material control deficiencies and the adequacy of disclosures about changes in internal control over financial reporting; and disclosures made to the Committee by the Corporation's CEO and CFO during their quarterly certification process about any significant deficiencies in the design or operation of internal controls or material weaknesses therein and any fraud involving management or other employees who have a significant role in the corporation's internal controls. The Audit Committee is further responsible for discussing MBNA's earnings press releases, as well as the types of financial information and earnings guidance (if any) provided to analysts and rating agencies. Nonetheless, the Audit Committee recommended that the Board include the improper audited consolidated financial statements in the improper statements described herein. By such actions, defendants Jews, Berick, Markowitz, Milstead and Unger breached their duties by causing or allowing the improper financials described above. As a result of these defendants' breach of their duties, any demand upon them would have been futile;

      (f)     Defendant Milstead, by his specialized financial expertise, was in a unique position to understand the business of MBNA, as well as its finances, markets and present and future business prospects. Specifically, defendant Milstead was a former partner of the accounting firm Ernst & Young LLP ("E&Y"). Milstead worked in public accounting and auditing at E&Y for over 31 years. Defendants Milstead, because of his unique qualifications, had a heightened duty to insure

the accuracy and fairness of MBNA's financials. Nonetheless, defendant Milstead breached his duties by causing or allowing the improper financials described herein. As a result of this defendant's breach of his duties, any demand upon him would have been futile;

(g)     Defendant Unger, by her specialized financial expertise, was in a unique position to understand the business of MBNA, as well as its finances, markets and present and future business prospects. Specifically, defendant Unger is an expert in securities regulation and a former Acting Chairman of the SEC. Defendant Unger served as the Commissioner of the SEC between 1997 and 2002. Defendant Unger, because of her unique qualifications, had a heightened duty to insure the accuracy and fairness of MBNA's financials. Nonetheless, defendant Unger breached her duties by causing or allowing the improper financials described herein. As a result of this defendant's breach of his duties, any demand upon him would have been futile;

(h)     The entire MBNA Board and senior management participated in the wrongs complained of herein. MBNA's directors are not disinterested or independent due to the following: defendants Hammonds, Berick, Boies, Civiletti, Jews, Lerner, Markowitz, Milstead and Unger served on the MBNA Board during the Relevant Period. Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs. Each of the above-referenced defendants breached the fiduciary duties that they owed to MBNA and its shareholders in that they failed to prevent and correct the improper financials. Thus, the MBNA Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected MBNA to millions of dollars in liability for possible violations of applicable securities laws;

(i)     The Individual Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Board

members of the Company from taking the necessary and proper action on behalf of the Company as requested herein. In addition to the conflicts that exist as a result of their participation in the improper accounting and insider selling, as detailed herein *supra*, the majority of the Board, including the defendants listed below, are subject to the following prejudicial entanglements:

(i) ***Berick and Lerner Have a Long-Time Personal Relationship:***

Defendant Berick is defendant Lerner's godfather. Further, defendant Berick was Lerner's father's college roommate. Because of their long-standing and entangling personal relationships, neither defendant Berick nor defendant Lerner will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(j) Defendant Lerner is the owner of the Cleveland Browns football team. In 1999, the Board approved a ten year marketing agreement with the Browns. As, defendant Lerner has an interest is safeguarding this agreement, any demand upon him would have been futile;

(k) Defendant Civiletti's son is employed by MBNA's legal department. Were Civiletti to recommend to the Board that plaintiff's action be vigorously prosecuted, his son's occupation would be seriously jeopardized. Accordingly, any demand upon defendant Civiletti would have been futile;

(l) Each of the key officers and directors knew of and/or directly benefitted from the wrongdoing complained of herein;

(m) The Director Defendants of MBNA, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from MBNA's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

(n) In order to bring this suit, all of the directors of MBNA would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(o) The acts complained of constitute violations of the fiduciary duties owed by MBNA's officers and directors and these acts are incapable of ratification;

(p) Each of the Director Defendants of MBNA authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them;

(q) Any suit by the current directors of MBNA to remedy these wrongs would likely expose the Individual Defendants and MBNA to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(r) MBNA has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for MBNA any part of the damages MBNA suffered and will suffer thereby;

(s) If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants. In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile; and

(t) If MBNA's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of MBNA. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by MBNA against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of MBNA, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause MBNA to sue them, since they will face a large uninsured liability.

98. Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for MBNA for any of the wrongdoing alleged by plaintiff herein.

99. Plaintiff has not made any demand on shareholders of MBNA to institute this action since such demand would be a futile and useless act for the following reasons:

(a) MBNA is a publicly held company with over 1,267,661,056 shares outstanding, and thousands of shareholders;

(b) Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c) Making demand on all shareholders would force plaintiff to incur huge

- 44 -

expenses, assuming all shareholders could be individually identified.

### COUNT I

**(Against the Insider Selling Defendants for Breach of Fiduciary
Duties for Insider Selling and Misappropriation of Information)**

100.  Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

101.  At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold MBNA common stock on the basis of such information.

102.  The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold MBNA common stock.

103.  At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of MBNA common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

104.  Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

### COUNT II

**(Against All Defendants for Breach of Fiduciary Duty)**

105.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

106. The Individual Defendants owed and owe MBNA fiduciary obligations. By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe MBNA the highest obligation of good faith, fair dealing, loyalty and due care.

107. The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

108. Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's publicly reported financial results and guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

109. As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, MBNA has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

110. Plaintiff on behalf of MBNA has no adequate remedy at law.

## COUNT III

### (Against All Defendants for Abuse of Control)

111. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

112. The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence MBNA, for which they are legally responsible.

113. As a direct and proximate result of the Individual Defendants' abuse of control, MBNA has sustained significant damages.

114. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

115. Plaintiff on behalf of MBNA has no adequate remedy at law.

## COUNT IV

### (Against All Defendants for Gross Mismanagement)

116. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

117. By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of MBNA in a manner consistent with the operations of a publicly held corporation.

118. As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, MBNA has sustained significant damages in excess of hundreds of millions of dollars.

119. As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

120. Plaintiff on behalf of MBNA has no adequate remedy at law.

## COUNT V

### (Against All Defendants for Waste of Corporate Assets)

121. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

122. As a result of the improper accounting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused MBNA to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers and incur potentially billions of dollars of legal liability and/or legal costs to

defend defendants' unlawful actions.

123. As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

124. Plaintiff on behalf of MBNA has no adequate remedy at law.

## COUNT VI

### (Against All Defendants for Unjust Enrichment)

125. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

126. By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of MBNA.

127. Plaintiff, as a shareholder and representative of MBNA, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT VII

### (Derivatively Against All Defendants for Violation of §10(b) of the 1934 Act and Rule 10b-5 Promulgated Thereunder)

128. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

129. During the Relevant Period, the Individual Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

130. The Insider Selling Defendants also sold over 2,846,633 shares of MBNA's common stock at inflated prices during the Relevant Period, receiving over $75.9 million in proceeds, while in possession of material non-public information. These defendants misappropriated MBNA's proprietary information and violated their so-called "abstain or disclose" duties under the federal securities laws when they sold MBNA stock without disclosing the information alleged to have been concealed herein.

131. At the same time the price of the Company's common stock was inflated by the Individual Defendants' misstatements and the Insider Selling Defendants were selling stock into the market, the Individual Defendants were causing MBNA repurchase a quarter of a billion dollars worth of its own stock on the open market at inflated prices.

132. As such, the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

   (a) Employed devices, schemes and artifices to defraud;

   (b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

   (c) Engaged in acts, practices and a course of business that operated as a fraud or deceit upon MBNA and others in connection with their purchases of MBNA common stock during the Relevant Period.

133. As a result of the Individual Defendants' misconduct, MBNA has and will suffer damages in that it paid artificially inflated prices for MBNA common stock purchased on the open market. MBNA would not have purchased MBNA common stock at the prices it paid, had the market been aware that the market price of MBNA's stock was artificially and falsely inflated by defendants' misleading statements. As a direct and proximate result of these defendants' wrongful conduct, MBNA

suffered damages in connection with its purchases of MBNA common stock during the Relevant Period. By reason of such conduct, the Individual Defendants are liable pursuant to §10(b) of the 1934 Act and SEC Rule 10b-5 promulgated thereunder.

## COUNT VIII

### (On Behalf of Plaintiff and the Class Against the Current Director Defendants for Breach of Fiduciary Duties)

134. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

135. The Current Director Defendants have violated fiduciary duties of care, loyalty, candor and independence to the public shareholders of MBNA and have acted to put their personal interests ahead of the interests of MBNA's shareholders.

136. By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as part of a common plan, are attempting to insulate themselves from liability and unfairly deprive plaintiff and other members of the Class of the true value of their investment in MBNA.

137. The Current Director Defendants have violated their fiduciary duties by entering into a transaction with Bank of America to insulate themselves from liability and without regard to the fairness of the transaction to MBNA's shareholders.

138. By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to advance their interests at the expense of plaintiff and other members of the Class.

139. The Current Director Defendants have violated their fiduciary duties by entering into a transaction with Bank of America without regard to the fairness of the transaction to MBNA's shareholders.

140. As demonstrated by the allegations above, the Current Director Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of MBNA because, among other reasons: (i) they failed to properly value MBNA; and (ii) they ignored or did not protect against the numerous conflicts of interest resulting from their own interrelationships or connection with the acquisition.

141. Because the Current Director Defendants dominate and control the business and corporate affairs of MBNA, and are in possession of private corporate information concerning MBNA's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of MBNA which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits.

142. By reason of the foregoing acts, practices and course of conduct, the Current Director Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

143. As a result of the actions of Current Director Defendants, plaintiff and the Class will suffer irreparable injury as a result of defendants' self dealing.

144. Unless enjoined by this Court, the Current Director Defendants will continue to breach their fiduciary duties owed to plaintiff and the Class, and may consummate the proposed acquisition which will exclude the Class from its fair share of MBNA's valuable assets and businesses, and/or benefit them in the unfair manner complained of herein, all to the irreparable harm of the Class, as aforesaid.

145. The Current Director Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

146. Unless the proposed acquisition is enjoined by the Court, the Current Director

Defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the acquisition terms, and will not supply to MBNA's minority stockholders sufficient information to enable them to cast informed votes on the proposed acquisition and may consummate the proposed acquisition, all to the irreparable harm of the members of the Class.

147. Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which the Current Director Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A. Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and violations of the Securities and Exchange Act of 1934;

B. Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of MBNA has an effective remedy;

C. Awarding to MBNA restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

D. Directing MBNA to take all necessary actions to reform and improve their corporate governance and internal control procedures to comply with the Sarbanes-Oxley Act of 2002, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the companies' by-laws or articles of incorporation and taking such other action as may be necessary to

place before shareholders for a vote the following Corporate Governance Policies:

    (i)    a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

    (ii)    a provision to permit the shareholders of MBNA to nominate at least three candidates for election to the Board;

    (iii)    appropriately test and then strengthen the internal audit and control functions;

    (iv)    control and limit insider stock selling; and

    (v)    reform executive compensation.

E.    Declaring that, as to the Eighth Cause of Action, this action is properly maintained as a class action;

F.    Enjoining defendants from proceeding with a merger agreement with Bank of America to the extent it includes protections or payoffs to defendants;

G.    Enjoining defendants from consummating a merger agreement with Bank of America unless, and until, the Current Director Defendants adopt and implement a procedure or process, such as an auction, to obtain the highest possible price for the Company;

H.    Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

I.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 8, 2005                    Respectfully submitted,

/s/ Joseph N. Gielata
JOSEPH N. GIELATA (#4338)
Attorney at Law
501 Silverside Road, Suite 90
Wilmington, DE 19809
Telephone: 302/798-1096
Facsimile: 302/397-0730

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
JEFFREY P. FINK
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: 619/525-3990
Facsimile: 619/525-3991

Attorneys for Plaintiff

## VERIFICATION

I, DONALD F. BENOIT, have read the Shareholder Derivative Complaint and know the contents thereof. Based upon my discussions with and reliance upon my counsel, the Complaint is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of June, 2005.

_____
DONALD F. BENOIT

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that, on July 15, 2005, I electronically filed the VERIFIED AMENDED SHAREHOLDER DERIVATIVE AND CLASS COMPLAINT (the "Filing") with the Clerk of Court using CM/ECF.

I hereby certify that, on July 15, 2005, I have e-mailed the Filing to the following non-registered participant:

> Richard C. Pepperman II
> **Sullivan & Cromwell LLP**
> 125 Broad Street
> New York, New York 10004-2498

> /s/ Joseph N. Gielata
> Joseph N. Gielata (DSB # 4338)
> Attorney at Law
> 501 Silverside Road, Suite 90
> Wilmington, Delaware 19809
> (302) 798-1096
> attorney@gielatalaw.com